RYNEAR VAN GIESEN, APPELLANT, v. SAMUEL BRIDG-FORD, RESPONDENT.

*Letters of administration — when refused — When an estate will be presumed to have been settled, after a long lapse of time — Term "instituted heir" in the civil law — duties of such an heir.*

In an application to the surrogate of the county of Albany for letters of administration, with the will annexed, of Anneke Jantz Bogardus, deceased, it was alleged · and admitted that she died in 1663, within the county of Albany.

*Held,* that the letters could not be issued on the ground that the deceased was an inhabitant of the county of Albany, as it was not shown that she was an inhabitant of that county at or immediately prior to her death ; nor could they be issued on the ground that she died within the county, leaving assets therein, as it was not shown that she was a non-inhabitant of the State.

The deceased died in 1663, and this application was made in 1878. *Held,* that, in such a case, where proceedings are instituted centuries after the occurrences which they are intended to revive took place, with a view to the disturbance of rights of property, long supposed to have been settled, a full compliance with all formalities should be required, and the party prosecuting such proceedings should be held to the strictest rules and requirements of the law.

By her will the testatrix nominated and instituted "as her sole and universal heirs, her children," naming them. *Held,* that at the time of her death the civil law, as modified by the laws and usages of Holland prevailed in this State, and that by that system the execution of the will devolved upon the "instituted heir," without the issue of any letters testamentary to him or to any person as an executor or administrator with the will annexed.

APPEAL from a decree of the surrogate of the county of Albany, denying an application of the appellant for letters of administration with the will annexed of Anncke Jantz Bogardus, deceased.

*J. J. Perry,* for the appellant.

*C. T. F. Spoor,* for the respondent.

BOCKES, J. :

This is an appeal from the decree of the surrogate of Albany county, denying the application of the appellant for letters of administration, with the will annexed, of Anncke Jantz Bogardus, deceased. The applicant for letters, present appellant, a resident of the State of New Jersey, presented his petition to the surrogate of Albany county, wherein he represented that he was a child of the seventh generation, and the nearest of kin now living of the deceased Anncke Jantz Bogardus, and heir to her estate, and entitled to share in the distribution thereof ; that said Anncke died in March, 1663, at (then) Port Orange, in the present county of Albany, leaving a last will and testament of both real and personal estate ; that such will was filed and proved as the law then required, and yet remains of record in the county of Albany, and that a copy thereof was annexed to the petition ; that no executor was named therein ; that at the time of her death the deceased was seized and possessed of both real and personal property situated in said county, of which personal property there yet remains a family Bible and other chattels undivided; and that no administration of the estate had ever been had. The appellant also named in his petition various persons living, next of kin and heirs-at-law of the deceased, obtained a citation, and, on its return, asked for letters of administration, with the will annexed, to be granted to him. Accompanying the petition to

the surrogate was an affidavit of the appellant, stating that he was a lineal descendant and heir-at-law of the deceased; that none of her lineal descendants, except one whose position did not bar the appellant's claim, had made wills, and that with said exception the lineal ancestors of the appellant had all died intestate; and, further, that no letters of administration had been granted on the estate of the deceased under her will or otherwise to his knowledge.

The respondent appeared in the surrogate's court on the return of the citation; set up that he was a lineal descendant of the deceased; that there was no personal property of the deceased undisposed of under the will; that all title thereto was gone from lapse of time; and he denied that the appellant had any interest in the inheritance claimed by him; and generally denied the jurisdiction of the court in the premises.

Upon the matters thus presented proofs were submitted to the court. It was admitted by the respondent that the decedent died in the present county of Albany in 1663. The will was also put in evidence by which the testatrix declared her children and descendants, naming them, "her sole and universal heirs," "and to them gave and bequeathed" all her real estate, chattels, credits, money, gold and silver coined and uncoined, jewels, clothes, linen, woolen, household furniture, and all property whatsoever, without reserve or restriction of any kind, to be disposed of after her decease, and divided by them in equal shares, to do with the same their own will and pleasure, without any hindrance whatsoever;" but with a reservation and reservations (1) that her first four born children should have 1,000 guilders," to be paid them out of the proceeds of a certain farm situated on Manhattan Island;" (2) that Jan Rodofson should have "a bed and milch cow;" (3) that Jonas and Peter Bogardus should have a house and lot, "therein described, with a bed and milch cow each;" (4) and that five persons (named) should have each a silver mug; all of which donations were to be provided for out of the first moneys received; and afterwards the remainder of the property to be divided and shared as aforesaid."

The appellant also put in evidence the confirmation of a grant of about sixty-two acres, situated on the island of Manhattan, to

" the children and heirs " of the deceased " in their possession and
enjoyment," for which (as was recited therein) said Anneke had
theretofore a patent " from the late Dutch Govenor, Peter Stuy-
vesant." The patent was dated July 4, 1654, and the confirma-
tion to the children and heirs of the deceased bore date March
27, 1667. The appellant also put in evidence the confirmation of
a grant of about 130 acres to the same " children and heirs," and
" in their possession and enjoyment," situated near " Mespats
mills ; " for which (as was recited therein) said Anneke had there-
tofore a patent. The patent bore date November 26, 1652, and
the confirmation March 27, 1667. The appellant also put in evi-
dence a like confirmation of a patent to the same " ye heirs of ye
said Annetie Bogardus, deceased, in their possession " of a lot near
Fort Albany — the patent, as recited therein, bore date April 23,
1652, and the confirmation July 10, 1667. The appellant also put
in evidence a grant of a lot " in the village of Beverwyck " from
Annetien Bogardus to David Peeterson Schuyler, dated December
22, 1660. The appellant also read in evidence a bill of sale (so
called) of a lot of land from the children and heirs-at-law of said
Annetins Bogardus to Dirk Wesselse, dated June 21, 1663, which
lot was described as their deceased mother's house and lot, * * *
the same that she occupied to the day of her death." This paper
seems to have been executed in duplicate, and the respondent put
the counterpart of it in evidence. The respondent also put in
evidence the grant from said children and heirs to said Dirk
Wesselse of the lot described in said bill of sale (so called), made
pursuant thereto ; which grant bears date July 17, 27, 1667.
The appellant also put in evidence a grant of a lot situated in
Albany, theretofore known as Beverwyck, from David Peterson
Schuyler to Wouter Albertson, Vander Wythoff, dated September
1, 1665, in which it was recited that the premises came to the
grantor through or under Annetie Bogardus. The appellant also
examined, as a witness, orally, Harriet J. Van Natten, who testified
that her ancestors on her mother's side were Bogardus, that a
family Bible and some small rings came to her mother by her
ancestors ; that she had the rings which her mother told her
came to her from her grandmother ; that her mother, who died at
an advanced age, told her that the ear-rings came down from the

Bogardus family, and that the Bible came the same way ; that the Bible was handed down from Peter Bogardus, who was a son of Anneke Jantz Bogardus ; and that her mother said the Bible was once owned by Anneke, deceased. The Bible and ear-rings were produced by the witness in court ; and the Bible was shown to be worth from fifteen to twenty dollars.

The foregoing is substantially a statement of the proceedings before the surrogate who, thereupon, denied the appellant's application for letters of administration with the will annexed.

I have been particular, and perhaps unnecessarily minute, in detailing the proceedings had before the surrogate, for the purpose of determining precisely how and to what extent the appellant made and established his case. Just what the proof was before the surrogate must be understood, for it is seen that the appellant was put to the proof, on the hearing before that officer, of every material fact giving him standing to demand letters. Usually the facts stated in the sworn petition are to be accepted as sufficient. This is so when those cited fail to appear, and when there is no appearance and no denial of the facts so stated by any one interested in the estate of the deceased. Here, however, there was an appearance by a party (for anything that appears to the contrary) having an interest in the estate, and holding at least equal rights with those of the appellant. He might, therefore, put the latter, as he did do, to full proof of all the material facts necessary to be established before the surrogate to entitle him to letters. Such was the position of the parties that, as against the respondent here, the contestant before the surrogate, the appellant was required to fully establish his case. On the record his petition stood wholly denied, and nothing was admitted on the hearing or trial except the death of the decedent at Albany, in 1663. As to the contestant then, did the appellant establish the fact that he was a lineal descendant, heir-at-law and next of kin of the deceased ? He so averred in his petition ; but the contestant put this at issue, and there is no proof, outside of the petition, of the alleged fact. As against the contestant then this averment of fact was and is unproved.

(2.) While it is alleged and proved that the decedent died in the county of Albany, it is not averred that she was an

*inhabitant* of that county at or immediately preceding her death. The grant to Dirk Wesselse, in describing the lot granted, speaks of it as the same the decedent occupied to the day of her death ; and her will speaks of her as residing in the village of Beverwyck. That she was an inhabitant of Beverwyck at or immediately preceding her decease might, perhaps, be inferred from those recitals, if the recitals were competent evidence of the facts recited. But the fact that the decedent was an inhabitant of the county, if necessary to the plaintiff's case, should have been alleged in the petition. In a case like this, when proceedings are instituted centuries after the occurrences which they are intended to revive, with a view to the disturbance of rights of property, long supposed to have been settled, it should be required that all formalities be fully complied with, and the party seeking such disturbance should be held to the strictest rules and requirements of the law. In strictness, the recitals referred to were not evidence of the facts recited ; and in strictness the petition should have contained a statement that the decedent was an inhabitant of Beverwyck, in the present county of Albany, at or immediately preceding her death. But it is insisted that the decedent, if not an inhabitant of Beverwyck at the time of her decease, died there, leaving assets therein. But, to authorize the issuing of letters in such case, it should be made to appear that the deceased was a non-inhabitant of the State at the time of the death. The statute is, that letters may be granted when the decedent, not being an inhabitant of the State, shall die in the county, leaving assets therein. The appellant's application was unsupported in this respect.

(3.) Nor is it made to appear, as it should be with entire certainty in this case, that the decedent died leaving assets to be administered and yet to be administered upon. The evidence submitted tends strongly to the conclusion that the provisions of the will were fully complied with and carried into effect immediately following the death of the decedent, by the parties in interest in the property. Certainly, there seems to have been a practical observance of its terms and requirements. From the great lapse of time since the death of the party it must be presumed that the first four born children of the deceased received the.

thousand guilders given them; and if further presumption be necessary to the case, then also that it was paid them out of the proceeds of the Manhattan farm. Those proceeds may have been obtained either from its use or from a sale. There is nothing to indicate that its use would not have produced very speedily the thousand guilders, or that it was not intended that this sum should come from its use. A sale was not directed in the will. But, if the thousand guilders were not paid as directed, the claim therefor was long since gone from lapse of time. The same may be said of the cows and beds, and mugs given to the parties named in the will. These donations being out of the way, or, in the language of the will, "provided for," the remainder of the property passed directly and absolutely to the legatees and devisees, for them "to do with the same their own will and pleasure, without any hinderance whatsoever." It seems that they did settle and arrange matters to a considerable extent. They accepted confirmations of grants jointly, and proceeded to make grants themselves of the property devised; and, as appears from the grant to Dirk Wesselse, they received from him for the grant 1,000 guilders, being a sum quite sufficient from this source to answer for the cows, beds and silver mugs. There is nothing indicating that the legatees and devisees did not fully and completely administer the estate according to the provisions of the will. That they did so is the fair presumption, as well from the facts proved, as also from the great lapse of time since the devises and bequests took effect. It is urged that there is some property yet remaining to be administered under the will, to wit: The Bible and ear-rings. But, in this respect, the proof wholly fails. There is no sufficient proof that either of these articles were ever the property of the decedent. The statement of the witness' mother that the Bible was once owned by the deceased does not prove the fact. This was but hearsay; but, even if it be admitted that the Bible and ear-rings once belonged to the deceased, then there is no proof that they belonged to her at the time of her death. Besides, *non constat*, but that they came down to the present holder of them from the legatee in the will. As above stated, there is a strong presumption in favor of the assertion that there was a full and complete settlement and division between the

devisees and legatees of the property disposed of by the will, growing out of the great lapse of time since that instrument took effect. This presumption is strengthened by the fact that these parties, immediately after the decedent's death, are proved to have taken possession of the property and adjusted their rights in regard to it. There is nothing to countervail this presumption. From these circumstances it should be now held, in the absence of all proof negativing the conclusion, that the estate of the decedent has long since been fully administered and settled satisfactorily to the beneficiaries named in the will, or to those immediately succeeding them in interest. The decree of the surrogate must be affirmed, with costs.

BOARDMAN, J., concurred.

LEARNED, P. J. :

I concur in the foregoing opinion of my brother BOCKES.

Part of the appellant's argument rests on the allegation that no letters testamentary, or of administration, are shown ever to have been issued. The appellant overlooks the fact that, at the time of the execution of the will and of the death of the testatrix, the law prevailing was the civil law, as modified by the laws and usages of Holland. (Daly's Hist. Sketch [1 E. D. Smith], XVII, XXVI.) By the civil law the execution of the will belonged to the *instituted heir ;* using that word with its civil law, and not its common law meaning. The person *instituted heir* (which is the very expression used in this will), succeeded to all the rights and (originally) to all the liabilities of the deceased. It was his duty to pay the legacies and discharge the debts. There was no executor in the meaning of that word in English law. (Inst., b. 2, tit. 19, 20; Domat Civil Law, tit. 1, §§ 1, 8.) Even if the heir took the *beneficium inventorii,* so as to avoid liability beyond what he received, still he was not like an executor who discharges a mere trust without any beneficial interest. (Inst., 2, 19, 6.) Or, to state the matter in another way, just as land now passes to the common-law heir, or to the devisee, without the intervention of an executor ; so *all* property passed to the *heir* of the civil law ; and there was no executor. (Vanderlinden Inst., 150, *et seq.*)

The appellant also argues that, by the terms of the will, it is to be considered a will of personal property; so far as was necessary to pay off legacies. And he cites some decisions on the familiar doctrine of English law as to the conversion of real into personal property. Here, too, the appellant overlooks the fact that that doctrine is one peculiar to English law, and one which arises from the different rules and different rights applied in English law to real and to personal property. No such difference was known to the law, as it existed here, when this will took effect. The rights of succession were the same as to movables and as to immovables. The *heir* took one class just in the same way in which he took the other. No such doctrine of the conversion of immovables into movables could have had any meaning at that time. It has arisen in English law, because the rules of descent as to immovables, or real property, have partly had a feudal origin. While the rules of distribution of movables, or personal property, have come from another source, and are sometimes different. Where there was no difference in the succession to, or in the manner of dealing with the two kinds of property, there could be no need of, or sense in, the imaginary conversion of one into the other.

Decree of surrogate affirmed, with costs against appellant.